**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CASE NO. 1:20-cv-00348-MR**

| | |
|---|---|
| **DENNIS RAMSEY,** ) | |
| ) | |
| Petitioner, ) | |
| ) | **MEMORANDUM OF** |
| vs. ) | **DECISION AND ORDER** |
| ) | |
| **TODD ISHEE, Secretary, North Carolina Department of Adult Correction,** ) ) ) | |
| ) | |
| Respondent. ) | |
| _____ ) | |

**THIS MATTER** comes before the Court on the Motion for Summary Judgment filed by the Respondent on March 20, 2023. [Doc. 9].

**I.   PROCEDURAL BACKGROUND**

Dennis Ramsey (the "Petitioner") is a prisoner of the State of North Carolina. The Petitioner initiated this habeas corpus proceeding seeking relief from a prison disciplinary conviction he received at Marion Correctional Institution on May 28, 2020 for use of disrespectful or profane language direct toward prison staff. [Doc. 1 at 1]. The Petitioner was placed on 20 days restricted housing and received 30 days loss of good-time credits and 30 days suspension of visitation to the canteen. [Id.]. The Petitioner asks this Court to restore the good-time credits, strike the infraction from his

record, and overturn the guilty verdict. [Id. at 5].

The Court entered an Order on January 17, 2023 directing the Respondent to respond to the § 2254 petition. [Doc. 6]. The Respondent filed its Motion for Summary Judgment on March 20, 2023, moving this Court to grant summary judgment in its favor and deny the § 2254 petition on the merits. [Doc. 9]. In support, the Respondent submitted a brief along with exhibits from the Petitioner's disciplinary record and hearing. [Doc. 10].

The Court issued an Order on April 3, 2023 advising the Petitioner of the requirements for filing a response to the summary judgment motion and of the manner in which evidence could be submitted to the Court. [Doc. 11]. The Petitioner filed his Response on April 5, 2023. [Doc. 12]. The Respondent's Motion for Summary Judgment is now ripe for review.

## II. STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is material only if it might affect the outcome of the suit under governing law. Id.

The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)(citing Fed. R. Civ. P. 56). The burden then shifts to the nonmoving party to proffer competent evidence and specific facts showing that there is a genuine issue for trial. Id. at 323-324. The nonmoving party must oppose a summary judgment motion by going beyond the pleadings and by their own affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial." Id. (citing Fed. R. Civ. P. 56). The nonmoving party "may not rest upon the mere allegations or denials of his pleading" to defeat a motion for summary judgment. Id. at 322, n.3.

Any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the summary judgment motion. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587–88 (1986). Where, however, the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate. Id. at 599. A court is bound

3

to enter summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. at 322.

In reviewing the Respondent's Motion for Summary Judgment, the Court must also consider the requirements governing petitions for habeas corpus as set forth in the Antiterrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2254(d). The AEDPA applies to "a person in custody under a state-court judgment who seeks a determination that the custody violates the Constitution, laws, or treaties of the United States." Rule 1(a)(1), 28 U.S.C. foll. § 2254. "Federal courts may not issue writs of habeas corpus to state prisoners whose confinement does not violate federal law." Wilson v. Corcoran, 562 U.S. 1 (2011).

Under the AEDPA, a state prisoner's claims are limited to allegations that challenge either the fact or duration of their confinement. Preiser v. Rodriguez, 411 U.S. 475, 489 (1973). A prisoner may challenge a disciplinary conviction under § 2254 to the extent that it increased the duration of the prisoner's custody, including loss of gain time credits. Wilkinson v. Dotson, 544 U.S. 74, 79 (2005)("Because an action for restoration of good-time credits in effect demands immediate release or a

4

shorter period of detention, it attacks 'the very duration of ... physical confinement,' ... and thus lies at 'the core of habeas corpus[.]' ")(quoting Preiser v. Rodriguez, 411 U.S 475, 487-488 (1973)).

## III. FACTUAL BACKGROUND

The forecast of evidence viewed in the light most favorable to the Petitioner is as follows:

Officer Mitchell reported that on May 4, 2020 at Marion Correction Institution while making rounds in the F2 west wing at approximately 2355 hours, the Petitioner repeatedly said, "Fat bitch," "Go eat pizza rolls," and "dumb ass bitch." [Doc. 10-2 at 10]. She gave several direct orders to "stop talking to staff that way," to which the Petitioner replied, "Go to hell or I'll put you there." [Id.]. Officer Mitchell then notified the sergeant on duty. [Id.].

Officer Thomas was assigned to investigate the incident and completed a written report of his findings. [Doc. 10-2 at 6-7]. He obtained the above written statement from Officer Mitchell. Officer Thomas then spoke with the Petitioner and read the Petitioner his rights in the offender disciplinary process from the DC-138A "Notice to Offender" form, on which the Petitioner signed his acknowledgement of receipt and understanding. [Id. at 6-8]. These rights include the right to 24-hour advance written notice of the charges prior to the disciplinary hearing, the right to be informed of the

5

alleged misconduct and to make statements to the investigating officer, the right to request witness statements and evidence be gathered on the prisoner's behalf, the right to be present at the hearing, the right to have staff assistance present at the hearing, the right to have evidence read during the hearing and right to refute that evidence, and the right to an administrative appeal. [Id. at 8].

Officer Thomas read Officer Mitchell's reporting statement to the Petitioner and obtained a written statement from him. [Doc. 10-2 at 6, 11]. The Petitioner denied saying anything to Officer Mitchell. [Doc. 10-2 at 11]. He stated that "camera footage will prove that she never was anywhere near my door to give me any direct order." [Id.]. The Petitioner added that "people were yelling things at her because of harassment amongst the block but she don't know who said what to her she just accusing me because I'm a target from previous issues." [Id.]. On the DC-138B Statement By Witness form, the Petitioner declined to request written statements be gathered on his behalf, that witnesses be present at the hearing, or that he receive staff assistance at the hearing. [Id.]. As to whether he wished to request physical evidence be reviewed at the hearing, the Petitioner checked the box for "No" but next to the box handwrote the words "camera footage." [Id.].

Officer Mitchell completed an addendum to her written statement on

6

May 19, 2020. [Doc. 10-2 at 12]. She stated that when she was assigned to D unit, she had several issues with the Petitioner, who "would constantly disobey orders, be disrespectful with staff, and [show] aggression towards staff." [Id.]. Officer Mitchell added that she does "not target any offenders, or harass the whole wing," that she stays "firm, fair and consistent" and is "not rude, disrespectful, prejudice, racist, or aggressive towards any offender or wing." [Id.].

Officer Thomas reviewed the camera surveillance footage per the Petitioner's request. [Doc. 10-2 at 6]. He concluded that it "neither adds or detracts from the original statement" and included a copy of the video footage with the disciplinary package. [Id.]. Based on the evidence gathered during the investigation, Officer Thomas recommended the Petitioner be charged with a B24 offense for use of disrespectful or profane language directed toward or in the presence of prison staff. [Id.].

A disciplinary hearing took place on May 28, 2020 at Marion Correctional Institution before hearing officer Robert Barker. [Doc. 10-2 at 4]. The hearing officer explained the waiver and appeal options and the Petitioner acknowledged the receipt and reading of his rights and entered a plea of not guilty. [Id.]. All witness statements and the investigating officer's report were read during the hearing. [Id.].

7

The hearing officer reviewed the camera surveillance footage, concluding that "it supports Officer Mitchell made a round during the time of the incident in question. As it relates to what was said by [the Petitioner], it neither adds nor detracts from the remaining evidence." [Id.]. The Petitioner made a verbal statement during the hearing that Officer Mitchell was "nowhere around" and that he "didn't say what she said he said." [Id.]. Based on the reporting party's statement and investigating officer's report, the hearing officer found the Petitioner guilty of the B24 offense. [Id.].

The Petitioner was placed on 20 days restricted housing and received 30 days loss of good-time credits and 30 days suspension of visitation to the canteen. [Doc. 1 at 1]. The Petitioner was provided with a copy of the written Record of Hearing, on which he signed his acknowledgement of receipt. [Doc. 10-2 at 4].

## IV. DISCUSSION

The Petitioner raises four claims of relief in his § 2254 petition: 1) he was denied the ability to request documentary evidence; 2) he was denied access to camera surveillance footage; 3) he was not provided with a factually specific statement of evidence used to support the guilty verdict; and 4) the disciplinary hearing officer's conduct violated his due process rights. [Doc. 1 at 2-5].

### A. Documentary Evidence

Although prisoners retain rights under the Due Process Clause, "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." Wolff v. McDonnell, 418 U.S. 539, 556 (1974). However, prisoners are entitled to certain due process protections, which include: (1) no less than 24 hours advance written notice of the disciplinary charges; (2) a written statement by the fact finder regarding the evidence relied upon and the reasons for any disciplinary action; and (3) a hearing where the prisoner has the opportunity to call witnesses and present documentary evidence. Id. at 546-566.

The Petitioner alleges that the prison violated his due process rights by failing to allow him to request documentary evidence. [Doc. 1 at 2-3; Doc. 12 at 2-3]. The Petitioner complains that the DC-138B Statement By Witness form did not contain corresponding space to request documentary evidence and that he had to write in the request for camera footage himself, which he claims the investigating officer "never reviewed before processing the write up against [him]." [Id.].

The Respondent has presented a forecast of evidence that shows the Petitioner was provided with the opportunity to request and present

9

documentary evidence in his defense. On the DC-138B Statement By Witness form provided to the Petitioner by Officer Thomas on May 8, 2020, the Petitioner was given the chance to request physical evidence be reviewed at the disciplinary hearing. [Doc. 10-2 at 11]. The Petitioner checked the box for "No," but also handwrote the words "camera footage" next to the box. [Id.]. Officer Thomas noted in his report that "offender did request camera footage as physical evidence." [Doc. 10-2 at 6]. As such, the Plaintiff's contention is manifestly refuted by the documentary evidence.

Both Officer Thomas and the disciplinary hearing officer reviewed the camera footage as requested by the Petitioner and this complied with the due process requirement set forth in Wolff that prisoners be afforded the opportunity to present documentary evidence on their behalf at the hearing. The Petitioner cannot show that he was denied any opportunity to request and present documentary evidence in his defense as the Respondent's summary judgment evidence directly refutes the Petitioner's allegations. As such, the Petitioner's claim is without merit and cannot withstand summary judgment.

### B. Access to Camera Surveillance Footage

The Fourth Circuit has held that under the Supreme Court's decision in Wolff, "inmates at risk of being deprived of a liberty interest, like good time

10

Case 1:20-cv-00348-MR   Document 13   Filed 03/25/24   Page 10 of 17

credits, have a qualified right to obtain and present video surveillance evidence." Lennear v. Wilson, 937 F.3d 257, 262 (4th Cir. 2019). However, "if prison officials identify a valid penological reason" to restrict access to such footage for use in a disciplinary proceeding, they should consider alternate avenues to provide the inmate with the information included in that evidence, such as "a written summary of the video" or entering the "video into evidence as a confidential exhibit." Id. at 271-272.

The Petitioner alleges that "though there was no audio to help prove my innocence, I still was denied access to camera footage once I requested it." [Doc. 1 at 3]. The Petitioner argues that he has the right to review the footage the same as staff and claims that the written summary of the footage described by the hearing officer was not detailed enough to replace the actual footage. [Doc. 12 at 2-3].

The Respondent asserts that the prison properly limited the Petitioner's access to the camera footage due to valid penological reasons, as "permitting an inmate to review video footage of his cell block would arm the inmate with dangerous information, such as, for example, camera blind spots." [Doc. 10 at 5-6]. The Respondent states that this permitted the hearing officer to give a written account of what happened in the recording, rather than to allow the Petitioner to review the footage itself. [Id. at 6]. The

Respondent also argues that the Petitioner cannot show harm or that the footage itself would have aided his defense. [Id. at 7].

The undisputed forecast of evidence shows that both Officer Thomas and the disciplinary hearing officer reviewed and summarized the camera surveillance footage in writing. [Doc. 10-2 at 4, 6]. Both concluded that the footage, which recorded no audio, only confirmed that Officer Mitchell made her round during the time of the alleged incident. [Id.]. The Petitioner's request for the camera footage to be reviewed was granted and he received the benefit of having the footage considered as evidence during the hearing, in line with the procedural due process protections set forth in Wolff and Lennear. The Respondent has provided a legitimate penological interest to justify restriction of the footage. The Petitioner has presented no summary judgment evidence to demonstrate that the video footage would have confirmed his version of events or changed the outcome of the proceeding had he been allowed to personally view the footage. As such, the Petitioner's claim that he was denied access to the footage in violation of his due process rights is without merit and cannot withstand summary judgment.

### C. Written Statement of Evidence

Due process protections that are afforded to prisoners in the context of a disciplinary proceeding include the right to receive a written statement by

the fact finder regarding the evidence relied upon and the reasons for any disciplinary action. Wolff, 418 U.S. at 546-566. As long as the disciplinary hearing officer's decision contains a written statement of the evidence that he or she relied upon, due process is satisfied. See Baxter v. Palmigiano, 425 U.S. 308, 323, n.5 (1976).

The undisputed forecast of evidence reflects that the Petitioner was provided with a copy of the written Record of Hearing, evidenced by his signature acknowledging receipt. [Doc. 10-2 at 4]. The Record of Hearing included a summary of all information, evidence, and statements set forth at the hearing, and the disciplinary hearing officer stated in the Record of Hearing that the guilty finding was based on the "reporting party's statement and investigating officer's report," therefore complying with the due process requirement set forth in Wolff. As such, the Petitioner's claim is without merit and cannot withstand summary judgment.

### D. Conduct of Disciplinary Hearing Officer

A disciplinary hearing officer's decision satisfies the requirements of procedural due process if the officer's findings "are supported by some evidence in the record." Superintendent, Mass. Corr. Inst., Walpole v. Hill, 472 U.S. 445, 454 (1985). This requires no more than "a modicum of evidence." Id. at 455. "Ascertaining whether this standard is satisfied does

13

not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence." Id. Federal courts do not review the correctness of a disciplinary hearing officer's findings of fact. Kelly v. Cooper, 502 F.Supp. 1371, 1376 (E.D.Va. December 29, 1980).

The Petitioner claims that the disciplinary hearing officer violated procedural due process by disregarding camera footage, rendering a guilty finding with "bias discrimination," and imposing sanctions "without a modicum of evidence." [Doc. 1 at 5]. The Petitioner argues that the camera surveillance footage does not establish that he made derogatory insults and alleges that the hearing officer was not impartial, having "already had his mind made to side with staff." [Doc. 12 at 4-5].

The undisputed forecast of evidence demonstrates that the disciplinary hearing officer observed the requirements for procedural due process. He explained the waiver and appeal options[1] to the Petitioner, read all witness

---

[1] Before a prisoner can bring a habeas action in federal court pursuant to § 2254, he must exhaust his state remedies. This includes administrative appeals and such state court proceedings as are available. "North Carolina permits a state prisoner to challenge the calculation of credits against a prison sentence by filing a Motion for Appropriate Relief, N.C. Gen. Stat. § 15A-1411 *et seq.*, in the superior court where the conviction arose and by appealing any adverse ruling thereon in the state appellate courts." Hatcher v. Keller, No. 1:10CV30, 2010 WL 1568458, at *2 (M.D.N.C. Apr. 16, 2010) (citing State v. Bowden, 193 N.C. App. 597, 597-600, 668 S.E.2d 107, 108-09 (2008)); see also Satori v. N.C. Att'y Gen., No. 1:11-cv-00024-RJC, 2011 WL 1542134, at *2 (W.D.N.C. Apr. 22, 2011); Tompkins v. Thomas, No. 5:10-HC-2004-BO, 2010 WL 4735910, at *2 (E.D.N.C. Nov. 15, 2020). Alternatively, "North Carolina allows prisoners to bring civil suits in equity in State court to challenge the denial of their good-time credits." Satori, 2011 WL 1542134, at *2 (citing Smith v. Beck, 176 N.C. App. 757, 627 S.E.2d 284 (2006); Teasley v. Beck,

statements and the investigating officer's report, heard the Petitioner's verbal statement, and provided the Petitioner with a copy of the written Record of Hearing. [Doc. 10-2 at 4]. The hearing officer also viewed and considered the camera surveillance footage per the Petitioner's request. [Id.]. The Petitioner offers no forecast of evidence in support of his assertion that the hearing officer violated his procedural due process rights or disregarded the camera footage.

The undisputed forecast of evidence also establishes that the disciplinary hearing officer's guilty finding was supported by "some evidence" in the record, as required by Hill. After reviewing all of the evidence presented at the hearing, the disciplinary hearing officer found the Petitioner guilty of the infraction based upon the reporting party's statement and the investigating officer's report, which the hearing officer noted in his written Record of Hearing. [Doc. 10-2 at 4].

Finally, as to the Petitioner's allegations that the disciplinary hearing officer was not impartial, the Petitioner has failed to present any forecast of evidence in support of this argument. The Petitioner's claims are conclusory

---

155 N.C. App. 282, 574 S.E.2d 137 (2002)). For reasons that are unexplained, nothing has been presented in the record regarding Plaintiff's appeals, or even whether Plaintiff undertook such actions. As such, the Court is unable to determine whether Plaintiff's claims are barred for failure to exhaust or because they are procedurally defaulted. Notwithstanding Defendant's failure to address these issues, Plaintiff's claims fail on the merits as set forth herein.

15

Case 1:20-cv-00348-MR   Document 13   Filed 03/25/24   Page 15 of 17

and appear to be based on nothing more than speculation, which is insufficient to overcome a motion for summary judgment. See Larkin v. Perkins, 22 Fed. App'x 114, 115, n.1 (4th Cir. 2001)(holding that plaintiff's "own, self-serving affidavit containing conclusory assertions and unsubstantiated speculation" was insufficient to withstand summary judgment).

The Petitioner has presented no forecast of evidence to show there is any genuine issue of material fact in dispute as to the claims raised in this ground. As such, the Petitioner's claims are without merit and cannot withstand summary judgment.

## V. CONCLUSION

For the reasons set forth above, the Court concludes that the forecast of evidence viewed in the light most favorable to the Petitioner shows that there are no genuine issues of material fact in dispute as to any of the claims raised in his § 2254 petition. Accordingly, the Respondent's Motion for Summary Judgment will be granted and the § 2254 petition will be denied.

Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases, the Court declines to issue a certificate of appealability. See 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 338 (2003)(noting that, in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable

16
Case 1:20-cv-00348-MR   Document 13   Filed 03/25/24   Page 16 of 17

jurists would find the district court's assessment of the constitutional claims debatable or wrong); <u>Slack v. McDaniel</u>, 529 U.S. 474, 484 (2000)(holding that, when relief is denied on procedural grounds, a petitioner must establish both that the dispositive procedural ruling is debatable and that the petition states a debatable claim of the denial of a constitutional right).

**IT IS, THEREFORE, ORDERED** that:

1) The Respondent's Motion for Summary Judgment [Doc. 9] is **GRANTED**;

2) The Petition for Writ of Habeas Corpus [Doc. 1] is **DENIED**;

3) The Court declines to issue a certificate of appealability pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases; and

4) The Clerk is directed to terminate this case.

Signed: March 25, 2024

Martin Reidinger
Chief United States District Judge